******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## 65-99 BURBAN ASSOCIATES, LLC *v.* NEW ANTIOCH CHURCH OF GOD ET AL.
### (AC 48401)

Suarez, Clark and Seeley, Js.

*Syllabus*

The defendant church appealed from the trial court's judgment of possession for the plaintiff in its summary process action for nonpayment of rent against the church and its pastor. The plaintiff entered into a multiyear lease with the defendants that provided, inter alia, that the plaintiff was required to make certain repairs to the subject property within thirty days of the execution of the lease. The plaintiff made some of the repairs in a timely manner and provided credits to the defendants for costs they incurred in completing other maintenance work. The church claimed that the trial court improperly rejected its special defenses of breach of contract and equitable estoppel. *Held*:

The trial court properly rejected the church's breach of contract special defenses, as the lease at issue was a commercial lease and any obligation of the plaintiff to perform the required repairs under the lease in a timely manner or at all was independent of the church's obligation to pay rent, and this court declined to review the church's contention that the lease was, in part, a residential lease, as that claim was not raised before or decided in the trial court and the claim was not adequately briefed.

This court declined to review the church's claim that the trial court improperly failed to apply the doctrine of equitable estoppel as alleged in its special defense, as the claim was inadequately briefed.

Argued February 2—officially released July 21, 2026

*Procedural History*

Summary process action, brought to the Superior Court in the judicial district of New Haven, Housing Session, where the named defendant filed a counterclaim; thereafter, the court, *Stone, J.*, denied the motion to dismiss filed by the defendant Esau A. Greene, Jr., and granted the plaintiff's motion to strike the counterclaim; subsequently, the case was tried to the court; judgment of possession for the plaintiff, from which the named defendant appealed to this court. *Affirmed*.

*Jerald Barber*, for the appellant (named defendant).

*John A. Farnsworth*, with whom were *Robert L. Rispoli* and, on the brief, *Jeff Mastrianni*, for the appellee (plaintiff).

*Opinion*

SEELEY, J.  In this summary process action, the defendant New Antioch Church of God (church)[1] appeals from the judgment of possession rendered by the trial court in favor of the plaintiff, 65-99 Burban Associates, LLC. On appeal, the church claims that the court improperly rejected its special defenses of breach of contract and equitable estoppel. We disagree and affirm the judgment of the court.

The following facts, which were found by the court or are undisputed in the record, and procedural history are relevant to our resolution of this appeal. "[The plaintiff] own[s] commercial premises located at 65-99 Burban Drive in Branford . . . .  The plaintiff entered into a five year lease agreement with [the church and Esau A. Greene, Jr., the church's pastor] from March 15, 2021, through March 14, 2026,[2] for approximately 14,000 square feet of church space, attached parsonage, a parking lot and the grounds.  The defendants agreed to pay $5500 on the first of every month for the first two

[1] Esau A. Greene, Jr., the pastor of the church, also is a defendant in this case but has filed a separate appeal, which we have addressed in a separate decision, also released today.  See *65-99 Burban Associates, LLC* v. *New Antioch Church of God*, 240 Conn. App. 427,      A.3d      (2026).  In this opinion, we refer to the church and Greene collectively as the defendants and individually by name when necessary.

[2] Because the lease expired on March 14, 2026, this court, sua sponte, issued an order on April 16, 2026, requiring the parties "to file simultaneous memoranda of no more than 2000 words on or before April 30, 2026, addressing whether the defendants are still in possession of the property and, if not, whether the appeal has become moot as a result of the defendants vacating the property and the expiration of the lease.  See *Bridgeport* v. *Grace Building, LLC*, 181 Conn. App. 280, 293–98, 186 A.3d 754 (2018)." (Footnote omitted.) In response, the parties indicated to this court that the defendants remain in possession of the premises, as they continue to operate a crisis center for vulnerable women in one of the buildings on the premises, even though the church building is under abatement by order of the fire marshal of the town of Branford and has been vacated. We conclude, therefore, that the appeal is not moot.  See id., 295 (summary process appeal becomes moot when, at time of appeal, appellant no longer is in possession of premises).

years of the lease and $7500 on the first of every month beginning on March 1, 2023.

"While the premises were rented in 'as is' condition, article XI of the lease required the plaintiff to ensure that **(1)** the roof was repaired within fifteen days of the execution of the lease, **(2)** the windows were repaired within thirty days of the execution of the lease, and **(3)** the [heating, ventilating, and air conditioning (HVAC)] system was in good working order within thirty days of execution of the lease. Thereafter, the defendant[s] became responsible for maintenance of all building components, repairs to the structure of the building, including mechanicals, and 'all repairs, maintenance and replacements to the interior and exterior of the demised premises and the fixtures and equipment therein and appurtenances thereto . . . .'

"The windows that had been broken due to the premises being vacant were repaired within the allotted time period. Although the roof repairs were not completed within fifteen days, the plaintiff did have a company make the repairs and the defendant[s] did not incur any costs for them. The plaintiff also had a heating and cooling company make repairs at the beginning of the defendants' tenancy and has, [at] various points, provided a credit to the defendants for maintenance work that [the defendants had] paid for, including $26,690 in March 2022 to replace the furnace, $1500 for the air conditioners in June 2022, and $2400 for service of the rooftop units in December 2022.

"After the initial payment for the security deposit [and] prorated [rental payments made in] March . . . and April 2021 . . . the defendants either did not make their monthly payments, paid late, or paid less than the rental amount. At the end of 2021, the defendants owed $24,940 in rent and late fees. At the end of 2022, the defendants owed $16,550. Despite the lease providing for a rent increase on March 1, 2023, the plaintiff did not begin charging $7500 until September 1, 2023. After one partial payment in September, the defendants stopped

making any payments for rent.  From September 2023 until October 2024, the defendants accrued $109,300 . . . in unpaid rent, use and occupancy, and late fees.

"In October 2021, [Greene] emailed Michael Massimino, an agent of the plaintiff, seeking to begin discussions to purchase the premises.  In July 2022, Massimino made an offer to the defendants [whereby] the plaintiff would sell the church and four acres of land for $1.8 million dollars, $[1.5] million dollars[3] would be due at closing, and $300,000 would be financed by a mortgage held by the plaintiff.  The parties would negotiate credits as reimbursement for work that the defendant[s] had done.  After the defendants had undertaken steps to obtain financing, Massimino told Greene that [the plaintiff] no longer wanted to sell the property." (Footnotes added.)

The plaintiff filed a notice to quit possession of the premises for nonpayment of rent, which was served on the defendants on May 28, 2024. The defendants did not vacate the premises by the June 4, 2024 date set in the notice, and the plaintiff thereafter commenced this summary process action for nonpayment of rent. In an amended complaint,[4] the plaintiff alleged that it had entered into a written lease agreement with the defendants, that the defendants took possession of the premises but failed to pay monthly rent, and that it had served on the defendants a notice to quit possession of the premises on or before June 4, 2024, but that, despite the notice, the defendants continued to remain in possession of the premises. At the outset of the action, Greene filed an appearance as a self-represented party, and the church was represented by Attorney Jerald Scott Barber. On July 17, 2024, Greene filed a motion to dismiss the action, alleging a lack of subject matter jurisdiction. On August 20, 2024, on behalf of the church, Attorney

[3]We note that the court's memorandum of decision includes a scrivener's error in that it states that $1.3 million would be due at closing. The transcript from the trial shows that the correct number is $1.5 million to be paid at the time of closing.

[4]The trial court file shows that the amended complaint was served on the church and Greene on July 16, 2024.

Barber filed an answer and ten special defenses[5] and sought a "right of recoupment," which requested money damages and which the court and the parties treated as a counterclaim.[6] Thereafter, the plaintiff filed a motion to strike the counterclaim.

A trial in this matter was held on October 10, 2024. At the outset of the proceeding, Attorney Barber informed the court that he had filed an appearance on behalf of both the church and Greene.[7] The court then addressed Greene's motion to dismiss and the plaintiff's motion to strike the counterclaim. The court denied the motion to dismiss and, following brief arguments from counsel regarding the motion to strike, granted the motion to strike. After those issues were resolved, the trial commenced. The court heard testimony from Lisa Amato, the plaintiff's property manager, and Greene and admitted various exhibits into evidence.

On December 30, 2024, the court rendered judgment of possession in favor of the plaintiff. In its memorandum of decision, the court found that the plaintiff had proven by a fair preponderance of the evidence that there had been a nonpayment of rent in violation of the terms of the lease. With respect to the special defenses, the

---

[5]The ten special defenses alleged that the plaintiff's action was barred (1) due to the plaintiff's failure to perform its obligations under the lease, (2) due to the plaintiff's breach of the lease, (3) by the doctrines of equitable and/or promissory estoppel, (4) by virtue of the doctrine of waiver, (5) by the doctrine of laches, (6) by virtue of the plaintiff's unclean hands, (7) by the plaintiff's contributory and/or comparative negligence, (8) by the plaintiff's failure to mitigate its damages, (9) by the plaintiff's fraudulent, negligent or innocent misrepresentations "as to the terms of the subject transactions," which induced the church to enter into those transactions and on which the church reasonably relied to its detriment, and (10) by virtue of accord and satisfaction.

[6]We note that the trial court file in this case does not include an answer or any special defenses filed by Greene when he appeared in the case in a self-represented capacity. In its memorandum of decision, however, the court treated the special defenses filed by the church alone as having been raised by "the defendants."

[7]The record shows that Attorney Barber filed an appearance on behalf of Greene on October 10, 2024, the day of the trial, which appearance was in addition to his previously filed appearance for the church.

court stated: "'[E]quitable defenses and counterclaims implicating the right to possession are available in a summary process proceeding.' *Cumberland Farms, Inc.* v. *Dairy Mart, Inc.*, 225 Conn. 771, 777, 627 A.2d 386 (1993). As a preliminary matter, the court notes that the special defenses did not provide any factual allegations to determine whether the special defenses were equitable and, thus, implicated the right to possession. Nevertheless, the court treated all of the special defenses as equitable in nature. As the defendants did not produce any evidence that this action is barred by waiver, laches, contributory and/or comparative negligence, failure to mitigate damages, or accord and satisfaction, those special defenses fail." Further, the court rejected the two special defenses of breach of contract and concluded that the defendants did not produce any evidence that the plaintiff should be estopped from pursuing this summary process action for purposes of the special defense of equitable and/or promissory estoppel. The court also determined that the defendants did not establish the special defense of unclean hands. The church, thereafter, filed this appeal, challenging only the court's findings that it did not establish its special defenses of breach of contract and equitable estoppel.[8]

"Summary process is a special statutory procedure designed to provide an expeditious remedy. . . . It enable[s] landlords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms." (Internal quotation marks omitted.) *TOV Realty, LLC* v. *Suarez*, 354 Conn. 745, 752,      A.3d      (2026). "Summary process statutes secure a prompt hearing and final determination. . . . Therefore, the statutes relating to summary process must be narrowly construed and strictly followed. . . . In an appeal challenging a judgment of possession, it is the function of this court to determine whether the decision of the trial court is

_____

[8]As we have indicated, Greene has filed a separate appeal from the judgment of possession rendered in favor of the plaintiff.

clearly erroneous. . . . This involves a two part function: [if] the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; [if] the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Huang* v. *Murray*, 237 Conn. App. 753, 756–57, 353 A.3d 312 (2026).

I

The church's first claim is that the court improperly rejected its breach of contract special defenses,[9] in which the church alleged that the defendants had been relieved of their obligation to pay rent as a result of the plaintiff's material breach of the lease. We disagree.

Initially, we set forth the following relevant legal principles that guide our resolution of this claim. "At common law the covenants of a lease are deemed to be independent so that a breach of the landlord's promise to perform services would not suspend the obligation of the tenant to pay the rent as agreed. 1 American Law of Property § 3.11; 1 Tiffany, Real Property (3d Ed.) § 88;

[9]The court made the following findings in its memorandum of decision with respect to the breach of contract special defenses. "The gravamen of the defendants' two special defenses for breach of contract is that the plaintiff cannot proceed in this summary process action due to its failure to make the repairs as required under the lease agreement. This argument does not prevail. While it is true that the plaintiff did not strictly comply with its obligations under article XI [of the lease], in that it did not make the HVAC repairs within thirty days or the roof repairs within fifteen days, the window repairs were made within the required time period. And even though the court credits [Greene's] testimony that the HVAC system was not in working order upon move in, the [plaintiff] cured the breach by giving the defendants a credit for the replacement of the furnace and air conditioning units. Any obligation that the plaintiff had under article XI [of the lease] was resolved long before this action commenced. As there is no current breach of the contract . . . these special defenses fail."

3 Thompson on Real Property § 1115. The rule has been recognized in this state. *Thomas* v. *Roper*, 162 Conn. 343, 346, 294 A.2d 321 (1972); *Hayes* v. *Capitol Buick Co.*, 119 Conn. 372, 376–77, 176 A. 885 (1935); *Sigal* v. *Wise*, 114 Conn. 297, 304–305, 158 A. 891 (1932)." *S.H.V.C., Inc.* v. *Roy*, 37 Conn. Supp. 579, 585, 428 A.2d 806 (1981), aff'd, 188 Conn. 503, 450 A.2d 351 (1982). As our Supreme Court has explained: "A lease is primarily a conveyance of an interest in land. Its covenants are independent covenants. . . . The independent covenants are in effect separate unilateral obligations. . . . A lease, therefore, considered as a contract, is a unilateral agreement with no dependency of performance." (Citations omitted.) *In re Edgewood Park Junior College, Inc.*, 123 Conn. 74, 77–78, 192 A. 561 (1937); see also *Fellows* v. *Martin*, 217 Conn. 57, 68, 584 A.2d 458 (1991) (tenant erroneously believed that she had right to withhold rent if her landlord breached lease).

"Statutory enactments . . . have modified [the] harshness [of this rule] with respect to residential property. [See] General Statutes §§ 47a-1 through 47a-20[f] [(defining rights and responsibilities of landlord and tenant with respect to residential leases)]." *S.H.V.C., Inc.* v. *Roy*, supra, 37 Conn. Supp. 585. Thus, "[t]he landlord and tenant statutes . . . [which] were passed to aid residential apartment dwellers . . . do not apply to commercial leases." (Citations omitted.) *Hoban* v. *Masters*, 36 Conn. Supp. 611, 613, 421 A.2d 1318 (1980); see, e.g., *Johnson* v. *Fuller*, 190 Conn. 552, 557–58, 461 A.2d 988 (1983) (rejecting claim that defendants were within their rights under General Statutes § 47a-4a to withhold rental payments due to landlord's failure to keep premises in habitable condition, as premises were in fact tenantable and, during relevant time period, premises were used for commercial rather than residential purposes, which rendered § 47a-4a inapplicable); *Vidiaki, LLC* v. *Just Breakfast & Things!!! LLC*, 133 Conn. App. 1, 14–15, 33 A.3d 848 (2012) (General Statutes § 47a-11 does not apply to commercial tenancies); *Beal Bank, S.S.B.* v. *Airport Industrial Ltd. Partnership*, 74 Conn. App. 460,

462–63, 812 A.2d 866 (2003) (General Statutes § 47a-21 (c) relates to residential real property and, therefore, was inapplicable to case involving commercial premises); *S.H.V.C., Inc.* v. *Roy*, supra, 585–86 (in context of commercial lease, landlord's breach of lease covenants is not defense to action for nonpayment of rent).

In the present case, the church contends that, under contract law, "it is well settled that a material breach by one party discharges the other party's subsequent duty to perform on the contract" and that the plaintiff's failure to perform the required repairs under the lease in a timely manner constituted a material breach of the lease, which excused the defendants from their obligation to pay rent. In support of this claim, the church asserts that "the lease was both commercial and residential," that its obligation to pay rent was dependent on the plaintiff's obligation to perform certain repairs under the lease, and that its withholding of rent was "a lawful response to the [plaintiff's] failure" to maintain a habitable premises. Furthermore, the church, which acknowledges the common-law rule that covenants in a commercial lease are deemed to be independent, "urges" this court to "adopt the 'better law of foreign jurisdictions,'" which the church argues is "trend[ing] away from common-law standards of commercial lease interpretation toward the direction of interpreting a lease as a straight contract . . . [under which] the covenant[s] of both the plaintiff and the defendant[s] would be dependent."

The plaintiff counters in its appellate brief that the church's breach of contract special defenses "fail as a matter of law [because] covenants in a commercial lease are deemed independent such that any breach by the plaintiff does not suspend the defendants' obligation to pay rent." Thus, according to the plaintiff, even if it were in breach of its obligations under the lease, "any such breach would not have excused the defendants from their obligation to pay rent." The plaintiff also argues that this court should decline to consider the church's contention that the lease was both commercial and residential, which

the plaintiff asserts is being raised for the first time on appeal. We agree with the plaintiff.

By asserting that the lease also was residential in nature, the church attempts to bring the lease within the purview of the landlord-tenant statutes governing residential leases and, thus, outside the general rule applicable to commercial leases that a landlord's failure to perform services as required under a lease does not suspend a tenant's obligation to pay rent. See *S.H.V.C., Inc.* v. *Roy*, supra, 37 Conn. Supp. 585–86. The church, however, never raised this claim before the trial court, which specifically found in its decision that the lease pertained to commercial premises.[10] Consequently, the court did not address or make any findings with respect to the claim raised on appeal that "the lease was both commercial and residential." Moreover, aside from this bare assertion, the church has neither specified what portion of the premises, if any, was residential, nor provided any analysis in support of its claim.

"It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the precise matter on which its decision is being asked. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *Karaoke Heroes NH, LLC* v. *RVRM Enterprises, LLC*, 237 Conn. App. 762, 777 n.18, 354 A.3d 250 (2026); see also Practice

---

[10]Article I of the lease describes the demised premises as "approximately 13,898 square feet of church space, attached parsonage, parking lot and all other grounds located at 65-99 Burban Drive [in] Branford . . . ." Further, article VI of the lease provides that the "[t]enant shall use the [d]emised [p]remises solely for the purpose of operating a [c]hurch/ [p]lace of [w]orship or any other related uses permitted by the [t]own of Branford and or the [s]tate of [Connecticut]."

Book § 60-5 (appellate court is generally not bound to consider claim not distinctly raised at trial or arising subsequent to trial); *Dept. of Public Health* v. *Estrada*, 211 Conn. App. 223, 239 n.10, 271 A.3d 1042 (2022) ("[w]e have repeatedly held that this court will not consider claimed errors on the part of the trial court unless it appears on the record that the question was distinctly raised at trial *and was ruled upon and decided by* the court adversely to the appellant's claim" (emphasis added; internal quotation marks omitted)), aff'd, 349 Conn. 223, 315 A.3d 1081 (2024). Moreover, "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Internal quotation marks omitted.) *Cokic* v. *Fiore Powersports, LLC*, 237 Conn. App. 558, 560–61, 351 A.3d 434 (2026). We decline to consider the church's contention that the lease was, at least in part, a residential lease, as the claim was not raised before or decided by the trial court, and the church has not briefed the claim adequately.

Accordingly, in view of the commercial lease at issue in this case, any obligation of the plaintiff to perform the required repairs under the lease in a timely manner or at all was independent of the church's obligation to pay rent. In other words, even if the plaintiff had breached the lease, any such breach was not a justification for the church's failure to pay rent. As a result, the church's breach of contract special defenses in this summary process action—which are premised on the assertion that the church was relieved of its obligation to pay rent due to the plaintiff's breach of the lease—necessarily fail.

The trial court, therefore, properly rejected the breach of contract special defenses.[11]

We also decline the church's invitation to reject the common-law standards pertaining to commercial leases[12] and to establish a "mutually dependent covenants rule" for commercial leases whereby "the failure of one party to perform its duties provides a defense for the other party against performing its corresponding promise." As this court has recognized, "[i]t is axiomatic that, [a]s an intermediate appellate court, we are bound by Supreme Court precedent and are unable to modify it . . . . [W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Internal quotation marks omitted.) *Mashantucket Pequot Tribal Nation* v. *Factory Mutual Ins. Co.*, 224 Conn. App. 429, 458 n.29, 313 A.3d 1219 (2024); see also *Roux* v. *Coffey*, 230 Conn. App. 130, 144–45, 330 A.3d 253, cert. denied, 351 Conn. 915, 331 A.3d 1217 (2025).

II

Next, the church claims that the court improperly failed to apply the doctrine of equitable estoppel, as alleged in its special defense. We decline to review this claim.

First, we set forth the legal principles and our standard of review applicable to claims of equitable estoppel. "The

---

[11]"As this court has observed, 'we may affirm a trial court's decision that reaches the right result, albeit for [a different] reason.' . . . *Stevens* v. *Khalily*, 220 Conn. App. 634, 644, 298 A.3d 1254, cert. denied, 348 Conn. 915, 303 A.3d 260 (2023); see also *South Windsor* v. *South Windsor Police Union, Local 1480, Council 15, AFSCME, AFL-CIO*, 41 Conn. App. 649, 656, 677 A.2d 464 ('we may affirm a correct result of the trial court for reasons different from those stated by the trial court'), cert. denied, 239 Conn. 926, 683 A.2d 22 (1996)." *Bouchard* v. *Commissioner of Motor Vehicles*, 238 Conn. App. 507, 520–21 n.12, 357 A.3d 284 (2026).

[12]See generally *Johnson* v. *Fuller*, supra, 190 Conn. 557–58 (landlord-tenant statutes do not apply to commercial leases, which are governed by common law).

party claiming estoppel . . . has the burden of proof. . . . Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous. . . . The legal conclusions of the trial court will stand, however, only if they are legally and logically correct and are consistent with the facts of the case. . . . Accordingly, we will reverse the trial court's legal conclusions regarding estoppel only if they involve an erroneous application of the law. . . .

"There are two essential elements to an estoppel: the party [against whom it is asserted] must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. . . . In the absence of prejudice, estoppel does not exist. . . . *Fischer* v. *Zollino*, 303 Conn. 661, 667–69, 35 A.3d 270 (2012)." (Internal quotation marks omitted.) *Doyle* v. *Chaplen*, 184 Conn. App. 278, 298, 194 A.3d 1198 (2018); see also *U.S. Bank National Assn.* v. *Eichten*, 184 Conn. App. 727, 755, 196 A.3d 328 (2018) ("[e]stoppel rests on the misleading conduct of one party to the prejudice of the other" (internal quotation marks omitted)).

In the present case, the court made the following findings in connection with the church's special defense of equitable estoppel. "The defendants have not produced any evidence that the plaintiff should be estopped from pursuing this summary process action. Although the defendants claim that they would not have entered into the lease agreement if they were aware of the condition of the premises, there was no testimony or evidence of any material misrepresentation by the plaintiff as to the conditions of the property. The defendants were fully aware of the repairs that needed to be made, as the [plaintiff] acknowledged those repairs in article XI of the lease. Nor was there any testimony that the defendants were induced to act. They did not introduce any evidence that [they] were looking at other premises in 2021 or that

they have sought to find more suitable premises since entering into this lease. Finally, there was no evidence of prejudice. Even though the plaintiff did not timely complete all the required repairs, the defendants were not prejudiced, as they received a credit for the repairs that should have been made by the [plaintiff]. The defendants have been in possession of the premises for nearly four years without paying rent for much of that time. The plaintiff continues to make maintenance repairs itself and credit the defendants for maintenance work that the defendant[s] undert[ook] despite the lease agreement requiring the defendants to be responsible for that work.

"To the extent that the defendants seek to estop the [plaintiff] from proceeding due to the failed sale of the premises, the defendants failed to produce any credible evidence that they were injured by the preliminary negotiations that the parties had regarding the sale of the property. There was no evidence that the parties reduced the oral agreement to written form. While the defendants may have relied on those informal conversations to begin to seek financing, such reliance is not reasonable, as an oral agreement for the sale of property is not enforceable. See General Statutes § 52-550 (a) ('[n]o civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property'). Moreover, the defendants could not have had any reliance on the plaintiff's statements once Massimino informed the defendants that the plaintiff no longer wanted to sell the property. Thus, the defendants' special [defense] of equitable estoppel . . . fail[s]."

We first point out that the church's appellate briefing with respect to this claim is confusing and lacks any meaningful analysis or citation to authority relating to equitable estoppel. In particular, the church asserts: "The trial court incorrectly refused to apply the doctrine

of equitable estoppel . . . . The facts of this case as applied to the applicable law show that the defendants' equitable estoppel special defense was proven. Equity abhors a forfeiture. *Menzies* v. *Fisher*, 165 Conn. 338, 357, 334 A.2d 452 (1973), quoting *Pierce* v. *Staub*, 78 Conn. 459, 466, 62 A. 760 (1906). Here, a definite promise [was] made in [the] lease agreement and by the plaintiff's representatives 'that repairs will be made timely' and further that 'insurance will pay,' result[ing] in the defendants' reliance upon those assertions. The defendants moved into the premises, began operations, incurred maintenance and repair expenses and received credits for the same from [the plaintiff]. The [plaintiff's] failure to provide heat during the heating season as provided by the lease resulted in the premises becoming unfit for the purposes of operating a church, related programs and its overnight shelter residency operations, as contemplated by the lease. As a direct result of the plaintiff's inaction, the defendants incurred loss of patronage, adverse financial effect."

After making these assertions, the church cites case law pertaining to the doctrines of equitable nonforfeiture and uninhabitability, which were not pleaded as defenses,[13] and it sets forth additional arguments pertaining to its claim that the plaintiff's material breach of the lease excused its nonpayment of rent, which we rejected in part I of this opinion. Thus, in the portion of its brief devoted to this claim, the church intermingles these other arguments and claims, which comprise most of its analysis. Moreover, the church's brief is devoid of citations to legal authority governing claims of equitable estoppel, and it lacks analysis applying relevant law to the facts of this case and demonstrating why the court's finding that it failed to meet its burden of proof with respect to this special defense is clearly erroneous.

It is incumbent on an appellant "to provide a meaningful analysis of [a] claim [on appeal] . . . and to include

---

[13]As we have indicated in part I of this opinion, § 47a-7 is not applicable to a commercial lease.

citations to relevant legal authority *and* an application of that law to the facts in the present case. . . . Stated differently, [i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do . . . [the] work, create the ossature for the argument, and put flesh on its bones." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Matusz* v. *Wellmore Behavioral Health, Inc.*, 234 Conn. App. 581, 593–94, 344 A.3d 208, cert. denied, 353 Conn. 926, 345 A.3d 811 (2025); see *Homebridge Financial Services, Inc.* v. *Jakubiec*, 223 Conn. App. 517, 543, 309 A.3d 1223 ("briefing is inadequate when it is not only short, but confusing, repetitive, and disorganized" (internal quotation marks omitted)), cert. denied, 349 Conn. 909, 314 A.3d 602 (2024); see also *Speer* v. *Brown Jacobson P.C.*, 233 Conn. App. 833, 838–39, 342 A.3d 1118 (2025) (declining to review inadequately briefed claim when plaintiff, who set forth relevant principles of law in appellate brief, did not provide any analysis applying those principles to facts of case); *Buchenholz* v. *Buchenholz*, 221 Conn. App. 132, 142 n.6, 300 A.3d 1233 (declining to review claim as inadequately briefed when brief was "devoid of legal analysis or citation to legal authority as to [the] claim"), cert. denied, 348 Conn. 928, 304 A.3d 860 (2023). Accordingly, we conclude that this claim is inadequately briefed and decline to review it.[14]

---

[14]Even if we were to review this claim, it would fail on its merits, as the church has not directed this court to anything in the record evidence that would lead us to conclude that the court's finding that the church did not meet its burden of proof of establishing its special defense of equitable estoppel is clearly erroneous. See *Fischer* v. *Zollino*, 303 Conn. 661, 667–68, 35 A.3d 270 (2012) ("The party claiming estoppel—here, the defendant—has the burden of proof. . . . Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there *is* evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . The legal conclusions of the trial court will stand, however, only if they are legally and logically correct and are consistent with the facts of the case. . . . Accordingly, we will reverse the trial court's legal conclusions regarding estoppel only if they involve an erroneous application of the law." (Citation omitted; emphasis in original; internal quotation

The judgment is affirmed.

In this opinion the other judges concurred.

---

marks omitted.)).  Our review of the transcript of the trial in this case supports the court's finding that "[t]he defendants ha[d] not produced any evidence that the plaintiff should be estopped from pursuing this summary process action." "Although there are several distinct elements to the defense [of equitable estoppel], ultimately equitable estoppel rests on the misleading conduct of one party to the prejudice of the other . . . [and] conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert . . . ."  (Internal quotation marks omitted.) *Kennynick, LLC* v. *Standard Petroleum Co.*, 222 Conn. App. 234, 258, 305 A.3d 632 (2023).

As the court found, and the record shows, "there was no testimony or evidence of any material misrepresentation by the plaintiff as to the conditions of the property." The lease sets forth repairs that the plaintiff was required to perform by a certain date, and the defendants, thus, were fully aware that repairs needed to be made to the property.  There also is nothing in the record before us demonstrating that the church was induced to enter into the lease as a result of a material misrepresentation by the plaintiff.  We also agree with the court's finding that "there was no evidence of prejudice." As the court explained, "[e]ven though the plaintiff did not timely complete all the required repairs, the defendants were not prejudiced, as they received a credit for the repairs that should have been made by the [plaintiff]," and the church acknowledges in its appellate brief that it had received credits from the plaintiff. Finally, the church has not raised any argument on appeal that its equitable estoppel claim is based on the failed sale of the property.